■ STANLEY G. SMITH, Respondent, v ANTHONY P. GENARDO, Appellant. [811 NYS2d 173]—

Crew III, J.P. Appeal from an order of the Supreme Court (Dowd, J.), entered January 12, 2005 in Otsego County, which, inter alia, denied defendant's motion for summary judgment dismissing the complaint.

In January 1999, plaintiff injured, among other things, his right knee as a result of a work-related accident and subsequently underwent arthroscopic knee surgery, which was performed by William Hopper. Hopper classified plaintiff as 75% disabled as of April 1999, and plaintiff apparently did not return to work prior to the January 2000 motor vehicle accident that gave rise to this action. Following such accident, plaintiff again complained of pain in his right knee. Hopper reduced plaintiff's disability rate to 50% in March 2000 and, in April 2000, performed a second arthroscopic procedure on plaintiff's right knee.[1] Thereafter, in September 2000, plaintiff underwent an independent medical examination in the context of his then ongoing workers' compensation case and was evaluated by John Buckner, an orthopedic surgeon. According to Buckner, plaintiff sustained a mild disability with respect to his right knee and, in that regard, suffered a $7^{1}/_{2}\%$ schedule loss of use of the right knee.[2]

Plaintiff commenced this action in December 2002 seeking to recover for injuries allegedly sustained as a result of the Janu-

[1]. We note in passing that Hopper's medical records and testimony suggest that plaintiff previously underwent surgery on his right knee in or about 1989.

[2]. Buckner appears to have been unaware of plaintiff's motor vehicle accident and, if anything, his report suggests that the loss of use specified is attributable to the January 1999 work-related incident.

ary 2000 accident.[3] Following joinder of issue, defendant moved for summary judgment dismissing the complaint contending that any injuries sustained by plaintiff did not rise to the level of a serious injury. Supreme Court denied defendant's motion and, apparently, searched the record and, in effect, awarded summary judgment to plaintiff, finding that "plaintiff has sustained a serious injury as defined in the New York State Insurance Law." This appeal by defendant ensued.[4]

In support of his motion for summary judgment dismissing the complaint, defendant tendered the affidavit of orthopedic surgeon Glenn Axelrod, who examined plaintiff in April 2004. Upon completing his physical examination of plaintiff and reviewing plaintiff's comprehensive medical records, as well as plaintiff's examination before trial testimony, Axelrod opined, "There is no evidence that the right knee complaints at this time have any relationship to the motor vehicle accident." In so concluding, Axelrod noted plaintiff's well-documented prior history of knee problems and was of the view that the difficulties that plaintiff experienced with his knee prior to the underlying motor vehicle accident simply persisted after the accident as well. Hence, Axelrod concluded that plaintiff did not suffer "a serious injury or loss of body part causally related to the accident of January 4, 2000." Axelrod's affidavit, in our view, was sufficient to discharge defendant's initial burden with regard to the significant limitation of use category, thereby shifting the burden to plaintiff to come forward with sufficient evidentiary material to create a question of fact in this regard. This plaintiff failed to do.

As this Court recently reiterated, "it is well settled that in order to establish a significant limitation of use of a body function or system, 'the medical evidence submitted by plaintiff must contain objective, quantitative evidence with respect to diminished range of motion or a qualitative assessment comparing plaintiff's present limitations to the normal function, purpose and use of the affected body organ, member, function or system' " (*Paton v Weltman*, 23 AD3d 895, 897 [2005], quoting *John v Engel*, 2 AD3d 1027, 1029 [2003]; *see Gehrer v Eisner*,

---

3. Notably, plaintiff's complaint does not specify the category under which he allegedly suffered a "serious injury" within the meaning of Insurance Law § 5102 (d).

4. Although our analysis of the serious injury issue is somewhat hampered by plaintiff's failure to plead the specific category or categories under which he seeks recovery, a review of the record as a whole and, more to the point, plaintiff's bill of particulars suggests that plaintiff is proceeding under either the 90/180-day or the "significant limitation of use" category. Hence, we will proceed accordingly.

19 AD3d 851, 852 [2005]). Additionally, the plaintiff is obliged to demonstrate that the limitation he or she purportedly suffered is more than mild, moderate or slight (*see Gehrer v Eisner, supra* at 852).

In opposition to defendant's motion, plaintiff relies primarily upon the affidavit of David Kammerman. According to Kammerman, plaintiff ambulates with a "slightly antalgic gait" and has "mild patella/femoral pain and medial and lateral joint line tenderness." Additionally, Kammerman observed that plaintiff's "left knee flexes 10 degrees further than the right knee," that plaintiff's right calf is one-half inch smaller than his left calf and that plaintiff has an unspecified degree of weakness in his right leg plantar flexion. Although Kammerman indeed opined that plaintiff's right knee pain was exacerbated by the underlying motor vehicle accident and that such accident is 25% responsible for the knee pain and limitations that plaintiff continues to experience, his affidavit nonetheless fails to demonstrate either, through objective medical evidence, the actual limitation of use that plaintiff has sustained or, alternatively, the manner in which plaintiff's alleged limitation compares to the normal function or use of the affected body member. At best, Kammerman's affidavit demonstrates that plaintiff has suffered a mild, minor or slight limitation of use—a conclusion seemingly confirmed by Buckner who, it will be recalled, found that plaintiff had only a mild disability with respect to his right knee and a 7½% schedule loss of use of that member. Plaintiff fares no better by resorting to the medical records included in the record on appeal, which demonstrate that Hopper actually reduced plaintiff's degree of disability following the motor vehicle accident. In short, plaintiff's proof is insufficient to raise a question of fact under the significant limitation of use category.

We reach a similar conclusion as to any claim that plaintiff may be asserting under the 90/180-day category. In this regard, the record reveals that as of the January 2000 motor vehicle accident, plaintiff had yet to return to work from his prior work-related injuries and surgery. Indeed, plaintiff's own examination before trial testimony indicates that he was leading an essentially sedentary lifestyle immediately prior to the accident and that his daily activities following the accident mirrored those he engaged in before the accident. Moreover, to the extent that plaintiff was able to identify any particular task that he was unable to perform, we cannot discern from his testimony either the length of time such impairment persisted or to which event—the January 1999 work-related accident or the January 2000 motor vehicle accident—such impairment is attributable.

Accordingly, Supreme Court erred in denying defendant's motion for summary judgment dismissing the complaint and, further, in finding that plaintiff sustained a serious injury within the meaning of Insurance Law § 5102 (d).

Peters, Mugglin, Rose and Kane, JJ., concur. Ordered that the order is reversed, on the law, with costs, motion granted, summary judgment awarded to defendant and complaint dismissed.